IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

CATHERINE JEAN LONG,         )
                             )
            Plaintiff,       )
                             )
      v.                     )    Case No. 12-04131-CV-C-REL-SSA
                             )
CAROLYN COLVIN, Acting Commissioner )
of Social Security,          )
                             )
            Defendant.       )

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Catherine Jean Long seeks review of the final decision of the Commissioner of Social Security denying plaintiff's applications for disability and supplemental security income benefits under Titles II and XVI of the Social Security Act ("the Act"). Plaintiff argues that the Administrative Law Judge (ALJ) (1) failed to support his residual functional capacity (RFC) assessment; (2) erred when he relied upon an opinion of a non-examining and non-treating physician; (3) erred when he failed to consider the opinion of a Social Security Administration employee; (4) erred when he found that plaintiff could return to her past relevant work; and (5) failed to sustained the Commissioner's burden at step five of the sequential evaluation. I find that the substantial evidence in the record as a whole supports the ALJ's conclusion that plaintiff is not disabled. Therefore, plaintiff's motion for summary judgment will be denied and the decision of the Commissioner will be affirmed.

I.   *COMMISIONER'S DECISION*

On November 3, 2008, plaintiff protectively filed her current set of applications for disability benefits (Tr. 97-100) and supplemental security income benefits (Tr. 101-06).[1] Plaintiff alleged disability since March 1, 2006 due to a combination of physical and mental impairments (Tr. 159). On January 21, 2009, plaintiff's claims were denied at the initial level

---

[1] Previously, plaintiff filed a set of applications on February 28,2003/March 15, 2003 that alleged disability since February 1, 2002. The claims were denied at the initial level on September 3, 2003 and by ALJ Jack R. Reed in a decision dated May 25, 2005. The Appeals Council denied plaintiff's request for review on September 1, 2005. Plaintiff did not pursue her appeal rights any further (Tr. 111-15).

(Tr. 50-53). On April 13, 2010, a hearing was held before the ALJ (Tr. 28-46). On October 12, 2010, the ALJ found that plaintiff was not under a "disability" as defined in the Act (Tr. 13-26). On March 22, 2012, the Appeals Council denied plaintiff's request for review (Tr. 1-4). Therefore, the October 12, 2010 decision of the ALJ stands as the final decision of the Commissioner.

## II.   *STANDARD FOR JUDICIAL REVIEW*

Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner. The standard for judicial review by the federal district court is whether the decision of the Commissioner was supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Mittlestedt v. Apfel, 204 F.3d 847, 850-51 (8th Cir. 2000); Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997); Andler v. Chater, 100 F.3d 1389, 1392 (8th Cir. 1996). The determination of whether the Commissioner's decision is supported by substantial evidence requires review of the entire record, considering the evidence in support of and in opposition to the Commissioner's decision. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989). "The Court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Wilcutts v. Apfel, 143 F.3d 1134, 1136 (8th Cir. 1998) (citing Steadman v. Securities & Exchange Commission, 450 U.S. 91, 99 (1981)).

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 401; Jernigan v. Sullivan, 948 F.2d 1070, 1073 n. 5 (8th Cir. 1991). However, the substantial evidence standard presupposes a zone of choice within which the decision makers can go either way, without interference by the courts. "[A]n administrative decision is not subject to reversal merely because substantial evidence would have supported

2

an opposite decision." Id. Clarke v. Bowen, 843 F.2d 271, 272-73 (8th Cir. 1988).

## III.   BURDEN OF PROOF AND SEQUENTIAL EVALUATION PROCESS

An individual claiming disability benefits has the burden of proving she is unable to return to past relevant work by reason of a medically-determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). If the plaintiff establishes that she is unable to return to past relevant work because of the disability, the burden of persuasion shifts to the Commissioner to establish that there is some other type of substantial gainful activity in the national economy that the plaintiff can perform. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000); Brock v. Apfel, 118 F. Supp. 2d 974 (W.D. Mo. 2000).

The Social Security Administration has promulgated detailed regulations setting out a sequential evaluation process to determine whether a claimant is disabled. These regulations are codified at 20 C.F.R. §§ 404.1501, et seq. The five-step sequential evaluation process used by the Commissioner is outlined in 20 C.F.R. § 404.1520 and is summarized as follows:

1.  Is the claimant performing substantial gainful activity?

    Yes = not disabled.
    No = go to next step.

2.  Does the claimant have a severe impairment or a combination of impairments which significantly limits his ability to do basic work activities?

    No = not disabled.
    Yes = go to next step.

3.  Does the impairment meet or equal a listed impairment in Appendix 1?

    Yes = disabled.
    No = go to next step.

4.  Does the impairment prevent the claimant from doing past relevant work?

    No = not disabled.
    Yes = go to next step where burden shifts to Commissioner.

5.  Does the impairment prevent the claimant from doing any other work?

3

Yes = disabled.
No = not disabled.

## IV. THE RECORD

The record consists of the testimony of plaintiff and a vocational expert at the April 13, 2010 hearing, in addition to the documentary evidence admitted at the hearing.

### A. ADMINISTRATIVE REPORT

The record contains the following administrative report showing plaintiff's earnings for the years 1978 through 2001:

| Year | Earnings | Year | Earnings |
|---|---|---|---|
| 1978 | $2,700.58 | 1990 | $ 1,027.57 |
| 1979 | 4,610.22 | 1991 | .00 |
| 1980 | 1,698.56 | 1992 | 5,247.00 |
| 1981 | 4,685.25 | 1993 | 1,015.31 |
| 1982 | .00 | 1994 | 2,049.04 |
| 1983 | 551.30 | 1995 | 3,364.37 |
| 1984 | 709.87 | 1996 | 5,810.21 |
| 1985 | 1,972.60 | 1997 | 10,931.51 |
| 1986 | 4,555.97 | 1998 | 19,643.00 |
| 1987 | 4,533.88 | 1999 | 22,341.69 |
| 1988 | 6,613.29 | 2000 | 2,654.30 |
| 1989 | 3,377.09 | 2001 | 9,291.54 |

(Tr. 127).

### B. SUMMARY OF MEDICAL RECORDS

As summarized by plaintiff on appeal, the medical record reflects diagnosis and treatment of multiple medical problems including back impairment, carpal tunnel syndrome, history of vision impairment, history of substance abuse, and bipolar disorder.

C. SUMMARY OF TESTIMONY

At the April 13, 2010 hearing, testimony was taken from plaintiff and Dan R. Zumalt, M.S., Q.R.P., a vocational expert.

1. Plaintiff's Testimony

When questioned about her medical problems, plaintiff testified that she was disabled due to histoplasmosis in her left eye, occipital nerve damage in her neck, spinal stenosis in her lower back, with pain radiating down her leg, posttraumatic stress disorder (PTSD), bipolar disorder, Barrett's esophagus, gastroesophageal reflux disease (GERD), and diverticulitis (Tr. 32-33). She reported a decrease in her peripheral vision in her left eye due to her ocular histoplasmosis disease (Tr. 32).

2. Vocational Expert's Testimony

Dan R. Zumalt, M.S., Q.R.P., a vocational expert, testified at the ALJ's request. The expert previously classified plaintiff's past relevant work of:

- Car hop as light and unskilled;
- Music teacher as light and skilled;
- Hotel clerk as light and semi-skilled;
- Receptionist as sedentary and semi-skilled;
- Server/Waitress as light and semi-skilled; and
- School bus monitor as light and unskilled (Tr. 189-91).

At the hearing, the expert classified plaintiff's past relevant work of:

- Database administrator as sedentary and skilled and
- Data entry clerk as sedentary and semi-skilled (Tr. 44-45).

V. FINDINGS OF THE ALJ

On October 20, 2010, ALJ Robert J. Burbank entered his decision finding that plaintiff has not engaged in substantial gainful activity since March 1, 2006, the alleged disability onset

5

date, because work after that date did not rise to the level of substantial gainful activity (Tr. 18). The ALJ found that plaintiff's severe impairments include mild degenerative disc disease of the lumbar spine and mild carpal tunnel syndrome and that plaintiff's non-severe impairments include vision impairment, substance abuse disorder, and bipolar disorder (Tr. 19-20). The ALJ found that no impairment meets or equals the severity requirements of a Listing (Tr. 20-21). The ALJ found that plaintiff retains the ability to perform a full range of light work (Tr. 21-24), that plaintiff could return to her past relevant work as a receptionist (Tr. 24), and that plaintiff could perform other jobs that exist in significant numbers in the national economy (Tr. 24-25). Accordingly, the ALJ concluded that plaintiff is not disabled (Tr. 25).

## VI.    ANALYSIS.

### A.    RFC ASSESSMENT

Plaintiff first argues that the ALJ's RFC assessment is not supported by substantial evidence of record. Plaintiff argues that the ALJ failed to first assess her RFC on a function-by-function basis. In response, the Commissioner argues that the ALJ's finding that plaintiff is capable of a full range of light work is sufficient.

The Eighth Circuit has noted that the regulations define light work as including "(1) lifting or carrying ten pounds frequently; (2) lifting twenty pounds occasionally; (3) standing or walking, off and on, for six hours during an eight-hour workday; (4) intermittent sitting; and (5) using hands and arms for grasping, holding, and turning objects." Holley v. Massanari, 253 F.3d 1088, 1091 (8th Cir. 2001) (citing 20 C.F.R. § 404.1567(b)); SSR 83-10, 1983 WL 31251, at *4-5. Moreover, the ALJ does not need to specifically list every exertional capacity involved with light work. McCoy v. Astrue, 648 F.3d 605, 615 (8th Cir. 2011) ("McCoy also argues that the ALJ erred by failing to make explicit findings regarding McCoy's ability to stoop, stand, walk, handle, and reach. We review the record to ensure that an ALJ does not

disregard evidence or ignore potential limitations, but we do not require an ALJ to mechanically list and reject every possible limitation").

First, I agree that by finding that plaintiff can perform a full range of light work, the ALJ addressed plaintiff's ability to sit, stand, walk, lift, carry, grasp, hold, and turn objects.

Furthermore, the ALJ discussed the answers to interrogatories submitted to a medical expert where the expert found that plaintiff retained the ability to perform light work; occasionally lift/carry 21 to 50 pounds; never climb ropes, ladders, or scaffolds; occasionally climb stairs and ramps, stoop, kneel, crouch, and crawl; and frequently balance (Tr. 423-28). The ALJ found that the expert's opinions were entitled to partial weight. Specifically, the ALJ found that the record supported the limitation to light work; that plaintiff was unable to lift 21 to 50 pounds occasionally; and that plaintiff did not have any restriction of postural work tasks (Tr. 24). In so doing, I find that the ALJ addressed plaintiff's ability to lift, carry, walk, stand, sit, grasp, hold, turn objects, climb, balance, stoop, kneel, crouch, and crawl.

Plaintiff argues that the ALJ failed to link his RFC determination to specific medical evidence of record. The Commissioner responds that the ALJ based his RFC assessment upon evaluation of the record as a whole.

The Eighth Circuit has observed that an ALJ "must determine a [plaintiff's] RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (citation omitted); 20 C.F.R. §§ 404.1545 and 416.945; SSR 96-8p. Although formulation of the RFC is part of the medical portion of disability adjudication, it is not based only on "medical" evidence but, instead, on all the relevant and credible evidence in the record. McKinney, 228 F.3d at 863. Assessing a plaintiff's RFC is not solely a "medical question." Pearsall v. Massanari, 274 F.3d 1211, 1217-18 (8th Cir. 2001). The ALJ makes the final determination of a plaintiff's RFC. Roberts v. Apfel, 222

7

F.3d 466, 469 (8th Cir. 2000) (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)). "It is [plaintiff's] burden, and not the Social Security Commissioner's burden, to prove [plaintiff's] RFC." Pearsall, 274 F.3d at 1217 (citing Anderson, 51 F.3d at 779).

In this case, I note that the ALJ spent considerable time evaluating the medical record, including clinical signs and laboratory findings. The ALJ found that, although the objective medical evidence was consistent with a mild back condition and mild carpal tunnel syndrome, the record did not support the severity of symptoms alleged by plaintiff.

The ALJ found that plaintiff's eye problems are not as severe as alleged. The ALJ observed that there are no medical records about the eye surgery or any follow-up treatment for decreased vision (Tr. 19). Plaintiff accompanied her request for review with additional medical evidence, but neither the surgery report nor the follow-up treatment records were included in the post-decision submission. I note that there are no complaints of impaired vision, no abnormal eye examinations, and no treatment of an eye problem in the post-decision submission (Tr. 438-75, 476-522).

The ALJ found that plaintiff's mental and substance abuse problems were not as severe as alleged. The ALJ noted plaintiff has a history of poly-substance abuse that did not last the prescribed period of at least 12 months (Tr. 19). The post-decision submission reflects continued sobriety and abstinence by plaintiff.

The ALJ noted that plaintiff's bipolar disorder was diagnosed and subsequently treated between May 2008 and February 2009, a period of less than 12 months. The ALJ found that this condition has improved (Tr. 19). On appeal, plaintiff argues her improvement was not enough to preclude consideration in the RFC assessment, however the post-decision evidence argues to the contrary. For example, during her most-recent office visit on August 9, 2011, plaintiff had no disorientation to person, place, or time; her remote memory, recent memory, and judgment were unimpaired; she was not unkempt; her mood was euthymic; she was not

8

depressed; and she was not angry (Tr. 441).

I note that the post-decision submission also supports the ALJ's finding of mild musculoskeletal problems. Specifically, during the previously cited August 9, 2011 examination, plaintiff had full range of motion of her cervical, thoracic, and lumbosacral spine, with neck and sacrum tenderness; no sensory exam abnormalities were noted; and upper and lower extremity strength was not impaired. The submission does not mention use of an assistive device for ambulation, although it observes that plaintiff's gait and stance were guarded (Tr. 441).

I therefore find that the ALJ's evaluation of the objective medical device is supported by substantial evidence.

Plaintiff further argues that the ALJ's RFC assessment is not supported by any medical opinion. Plaintiff discounts the medical expert's opinions because the ALJ only gave the opinions partial weight. In response, the Commissioner argues that the ALJ need not accept or reject a medical opinion in totality to find support for his or her RFC.

An ALJ does not have to rely entirely on a doctor's opinion, nor is he or she limited to a simple choice of the medical opinions of record when he or she formulates the residual functional capacity. Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the [plaintiff's] physicians") (internal citations omitted). Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between a residual functional capacity finding and a specific medical opinion on the functional capacity in question."). The RFC assessment is specifically reserved to the Commissioner and the ALJ, not a plaintiff's doctors. The Commissioner uses medical sources to "provide evidence" about several factors, including residual functional capacity, but the "final

responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 416.927(d)(2).

An ALJ makes his or her own assessment based on a review of the record as a whole. Steed v. Astrue, 524 F.3d 872, 865 (8th Cir. 2008) (ALJ's residual functional capacity finding based upon diagnostic tests and examination results); Halverson v. Astrue, 600 F.3d 922, 933-34 (8th Cir. 2010).

Because the medical record is devoid of any medical opinion from a treating medical source, plaintiff argues that the ALJ should have contacted plaintiff's medical sources and elicited medical opinions.

However, "[i]t is [plaintiff's] burden, and not the Social Security Commissioner's burden, to prove [plaintiff's] RFC," Pearsall, at 1217. I agree with the Commissioner that if plaintiff wished to obtain a medical opinion from a medical source regarding her physical or mental capabilities for consideration in connection with her claim, she should have done so. I find that the record before the ALJ was sufficient and the ALJ was not required to contact any of plaintiff's treating physicians.

Plaintiff also argues that the ALJ had a duty to develop the record and obtain consultative examinations as to her physical and mental functional limitations. However, an ALJ is only required to order medical examinations and tests where the medical records presented to her do not give sufficient medical evidence to determine whether the claimant is disabled. Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994); 20 C.F.R. § 416.919a(b), Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) ("Although that duty [to fully develop the record] may include re-contacting a treating physician for clarification of an opinion, that duty arises only if a crucial issue is undeveloped."). Furthermore, it is plaintiff's responsibility to provide medical evidence to show that she is disabled. 20 C.F.R. § 416.912; Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

Here, I find that the ALJ correctly based his RFC on the record as a whole including the objective medical record, the opinion of the medical expert, the opinion of a consulting psychologist, plaintiff's daily activities, the treatment modalities, and plaintiff's credibility. I find no need to supplement the record through the performance of consultative examinations.

An ALJ's decision should reflect a careful consideration of plaintiff's subjective complaints in light of the record as a whole when formulating the RFC. Wiese v. Astrue, 552 F.3d 728, 733-34 (8th Cir. 2009) (disagreeing with plaintiff's contention that the ALJ's credibility findings were conclusory and insufficiently explained; noting a significant portion of the decision was devoted to a discussion of credibility, treatment history). Pain and mental limitations are a subjective experience, and in recognition of this fact, regulations require the ALJ to analyze the credibility of a plaintiff's subjective complaints of pain by assessing: (1) the plaintiff's daily activities; (2) the duration, frequency and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). See also Lowe v. Apfel, 226 F.3d 969, 971-72 (8th Cir. 2000); 20 C.F.R § 416.928.

Here, the ALJ considered plaintiff's treatment modalities. There have been no hospitalizations, back surgeries, or carpal tunnel releases to address the musculoskeletal problems. Plaintiff has not undergone any recent eye treatment or surgery. The ALJ noted no recent treatment by a mental health professional. Although plaintiff has undergone Kenalog injections, the ALJ credited plaintiff's statements that the injections resulted in significant improvement in her pain symptoms (Tr. 440).

The ALJ found the minimal treatment inconsistent with plaintiff's allegations of disabling symptom. Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997). ("plaintiff's] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny

11

benefits.").

An ALJ may consider a variety of factors when evaluating a plaintiff's credibility including work history. Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001); Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir.1993) (plaintiff's credibility is lessened by a poor work history). Here, the ALJ found that plaintiff's credibility was diminished by her sporadic work history and her low earnings and wide variations in reported earnings from year to year.

Finally, the ALJ noted inconsistencies between plaintiff's descriptions of her limitations and her daily activities. For example, the ALJ noted that plaintiff worked as a piano teacher, small parts assembler, and secretary/database administrator since her eye surgery, that these jobs require significant use of the eyes, and that plaintiff's strongest earnings came in 1997 through 1999, shortly after plaintiff underwent her eye surgery. I note that the post-decision submission also includes an emergency room chart from September 8, 2011, wherein plaintiff reported that she was then enrolled as a student at Lincoln University (Tr. 506); and other records from 2010 and 2011, that describe plaintiff as a college student (Tr. 447, 450, 452, 455, and 458). These are activities requiring physical and mental abilities that are inconsistent with the level of disability alleged by plaintiff.

In summary, I find that substantial evidence supports the ALJ's finding that plaintiff retains the ability to perform a full range of light work.

B.      MEDICAL OPINION

Plaintiff next argues that the ALJ failed to properly evaluate the medical opinions of a consulting medical expert and a consulting psychologist. In response, the Commissioner argues that the ALJ is only required to include in the RFC those limitations that he or she finds are supported by the evidence.

Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, describing what an individual

can do despite a severe impairment, specifically an individual's physical or mental abilities to perform work-related activities on a sustained basis. SSR 96-5; see 20 C.F.R. §404.1513(a) (defining "acceptable medical source"). Generally, the opinions of an examining psychologist or physician should be given greater weight than the opinions of a source who had not examined the individual. Shontos v. Barnhart, 328 F.3d 418, 425 (8th Cir. 2003).

The Eight Circuit has acknowledged that a plethora of opinions, "admittedly send mixed signals about the significance of a claimant's daily activities in evaluating claims of disabling pain" Clevenger v. Soc. Sec. Admin., 567 F.3d. 971, 976 (8th Cir. 2009); and that, for example, "[t]he ability to perform sporadic light activities does not mean that the claimant is able to perform full time competitive work." Ross v. Apfel, 218 F.3d 844, 849 (8th Cir. 2000) (citing Burress v. Apfel, 141 F.3d 875, 881 (8th Cir. 1998). Nevertheless, a claimant's activities should be considered by the ALJ, and a reviewing court should evaluate the ALJ's credibility determination, based in part on daily activities, under the substantial evidence standard. See McDade v. Astrue, 720 F.3d 934, 998 (8th Cir. 2013). In McDade, the court held that the ALJ's credibility finding was supported by substantial evidence when, among other factors, the ALJ considered that the plaintiff "was not unduly restricted in his daily activities, which included the ability to perform some cooking, take care of his dogs, use a computer, drive with a neck brace, and shop for groceries with the use of an electric cart." Id. Similarly, in Clevenger, supra, the court held that it was "not unreasonable" for the ALJ to rely on evidence of the plaintiff's daily activities in finding that her assertion of disabling pain was not entirely credible. Id.

Post-hearing, the ALJ submitted interrogatories to Anne E. Winkler, M.D., a medical expert. After review of the medical records, the expert opined that plaintiff had no limitations from March 2006 through October 2009. The medical expert opined that more recently plaintiff has been capable of lifting/carrying up to 20 pounds frequently and between 21 and

13

50 pounds occasionally; sitting up to four hours at a time and eight hours total during an eight-hour workday; and standing/walking up to three hours at a time and six hours total during an eight-hour workday. The medical expert opined that plaintiff does not need a cane to ambulate; can continuously use her hands, except that she can only frequently push and pull; can frequently operate foot controls; can occasionally perform postural activities, except she can frequently balance but should never climb ladders or scaffolds; and, except for a prohibition on work at unprotected heights, can occasionally or frequently tolerate exposure to environmental hazards (Tr. 420-22).

Plaintiff argues that the ALJ (1) gave only partial weight to the expert's opinion; (2) the ALJ did not adopt any of the expert's exertional limitations; (3) the expert did not examine plaintiff; and, (4) because there is no other RFC evidence in the record, the ALJ should have sent plaintiff for a consultative examination and/or obtained a medical opinion. The Commissioner responds that the expert's opinion reflects an ability to perform light work. The Commissioner argues the ALJ gave the opinion partial weight after reviewing the record as a whole. Specifically, the ALJ adopted the basic RFC for light work, found that the carpal tunnel syndrome reduced the lifting/carrying capabilities, and the record did not support the limitations on posturals.[2]

As noted above, the ALJ need not adopt or reject any medical opinion and may base his RFC determination on review of the record as a whole. I find substantial evidence supports the ALJ's weighing of the expert's opinion. Furthermore, the post-decision submission adds further support to the ALJ's evaluation, i.e., the grossly normal physical examinations, plaintiff's positive response to the injections, and plaintiff's college attendance.

Concerning plaintiff's mental status, there are no opinions by any treating mental health professional. However, on January 16, 2009, Alan Aram, Psy.D., a State of Missouri

---

[2] In passing, I agree with defendant that plaintiff's argument that the ALJ did not include any limitations due to the non-severe carpal tunnel syndrome is contradicted by this reduction of the lifting/carrying due to the carpal tunnel syndrome.

Disability Determination Services (DDS) psychological consultant, opined that plaintiff's substance abuse and affect disorder, in combination, meet the severity requirements of Listing 12.09 on substance addiction disorder and Listing 12.04 on affective disorder. However, the consultant also concluded that plaintiff does not have a severe mental impairment when the substance addiction disorder is excluded from the evaluation (Tr. 307-18).

The ALJ gave significant weight to the consultant's opinion. However, the ALJ found that plaintiff's substance addiction disorder was not a severe impairment because it did not last the prescribed period of at least 12 months. I agree that the post-January 2009 records, including the post-decision submission, reflect plaintiff's sobriety and abstinence.

Plaintiff argues that the consultant's opinion was not based upon the whole record, because it was given more than a year before the ALJ's decision. In response, the Commissioner argues that reliance on the consultant was proper because the ALJ specifically noted that the more recent evidence was consistent with the opinion and that there is no limitation on the amount of time that may pass between a report and an ALJ's decision. Casey v. Astrue, 503 F.3d 687, 694 (8th Cir. 2007) ("The ALJ did not err in considering the opinion of [the State agency medical consultant] along with the medical evidence as a whole."); Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) ("[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it.").

I note that plaintiff alleged that her disability began on March 1, 2006, and that the consultant gave his opinion in January 2009, almost three years later; therefore, the consultant considered almost 75% of the period from the alleged disability onset date in 2006 through the date the ALJ entered his decision in 2010. The ALJ cited and relied on the more recent medical evidence supporting the consultant's opinion. Furthermore, the post-decision submission

15

supports the consultant's opinion - specifically, there was no treatment by a mental health professional and no inpatient hospitalization for the bipolar disorder. And finally, during her most recent office visit on August 9, 2011, plaintiff displayed no disorientation to person, place, or time; plaintiff's remote memory, recent memory, and judgment were unimpaired; plaintiff was not unkempt; plaintiff's mood was euthymic; plaintiff was not depressed; and plaintiff was not angry (Tr. 441).

Plaintiff also argues that the consultant's opinion is not substantial evidence because he is neither a treating nor an examining physician. In response, the Commissioner notes that an ALJ may give the opinion of a state agency consultant significant weight, particularly when there is no treating physician evidence that contradicts the opinion.

The Eighth Circuit has held that an ALJ may substitute the opinions of non-treating physicians in several instances, including one in which a treating physician gives inconsistent opinions that undermine the reliability of such opinions. Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006); Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000). The regulations specifically provide that the opinions of non-treating physicians may be considered and relied upon by an ALJ. 20 C.F.R. § 404.1527(f); Hacker, 459 F.3d at 939.

In summary, I find that substantial evidence supports the ALJ's findings as to the weight to be given to the opinions of the medical expert and DDS psychological consultant.

## C.  SOCIAL SECURITY ADMINISTRATION EMPLOYEE'S OBSERVATIONS

Plaintiff argues that the ALJ ignored an opinion by a Social Security Administration employee. In response, the Commissioner argues that the evidence disputing plaintiff's allegations also disputes the employee's observations.

Where the same evidence disputing a plaintiff's allegations also disputes a third party's observations, the failure of an ALJ to discuss the observations does not warrant remand. Buckner v. Astrue, 646 F.3d 549, 559-60 (8th Cir. 2011)(The Eighth Circuit has held that

16

even where the ALJ did not expressly address a third party statement in his decision and the court could not determine from the record that the ALJ considered the statement at all, the error does not require remand where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the third party's statement); Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)(The court further noted that, because the same evidence also supports discounting the testimony of Young's husband, the ALJ's failure to give specific reasons for disregarding his testimony is inconsequential); Lorenzen v. Chater, 71 F.3d 316, 318-19 (8th Cir. 1995).

On November 3, 2008, an employee (D. McGuire) conducted the application interview of plaintiff for the Social Security Administration. The employee reported that plaintiff had no problems with hearing, reading, breathing, understanding, coherency, concentrating, talking, answering, sitting, standing, walking, using hands, or writing. The employee described plaintiff as pleasant, appropriately dressed, neat, and clean. However, the employee also reported that plaintiff "had to take her glasses on and off to be able to see, [held] paperwork very close to her eyes to read, [and] adjusted in the chair several times throughout the 1½ hour interview. Slow getting up and moving." (Tr. 144).

While it is true that the ALJ did not name the employee specifically, the ALJ said that he reviewed the whole record. Moreover, plaintiff's argument that the ALJ should have addressed the employee's observations is selective: on one hand, plaintiff argues that the ALJ should have discussed the employee's observations about plaintiff's eyesight and her capacity to sit, but on the other hand, plaintiff entirely ignores the employee's observations discrediting her allegations, e.g., pleasant behavior; no problems with coherency, understanding, and concentrating; no problems using her hands or writing; and no problems standing or walking.

I agree with the Commissioner that the ALJ's discussion of the plaintiff's lack of treatment of the back and eye problems, plus the ALJ's discussion of plaintiff's daily activities,

apply equally to the employee's observations of plaintiff.

Based on this evidence, the ALJ could properly find that the employee's observations about plaintiff's apparent visual and movement problems were inconsistent with other credible evidence in the record. Because the observations are not credible evidence, the ALJ was free to exclude them from his RFC finding because the RFC need only include the plaintiff's credible limitations. Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006).

D.   PAST RELEVANT WORK

Next, plaintiff argues that the ALJ erred in finding that she could perform her past relevant work of receptionist because that job was not held long enough to qualify as past relevant work. In response, the Commissioner argues that the job was held long enough to be relevant.

When plaintiff filed her claim, she stated that she was a clerical/secretarial from May 1996 to September 1996, and again from April 1997 to March 2000 (Tr. 160). At the April 13, 2010 hearing, when asked whether she worked as a receptionist for about three years, plaintiff said "Yes" (Tr. 42).

Plaintiff testified that she started working as a receptionist, progressed to a data entry operator, and finally was promoted to a database administrator. Plaintiff said that she did the data entry and other work for about eleven years, and that she held the database administrator position for five of those years (Tr. 42-45).

The vocational expert classified the receptionist job as SVP-4, that is, specific vocational preparation of three to six months (Tr. 190).

Based on the above analysis, I find that plaintiff held the position of receptionist long enough for it to be relevant.

Plaintiff further argues that, even assuming receptionist is relevant work, she cannot return to that position because her carpal tunnel syndrome prevents her from writing, typing,

and handling small objects eight hours a day.

First, this is a RFC issue, not a step four issue. Second, the ALJ found that the carpal tunnel syndrome is severe; however, he did not imposed any manipulative restrictions on plaintiff but imposed restrictions on lifting and carrying. Finally, the ALJ found that plaintiff retains the ability to perform a full range of light work. Plaintiff does not challenge the expert's opinion that the manipulative demands for the receptionist job are within the parameters of light work.

In summary, I find substantial evident supports the ALJ's step four determination.

E.  **STEP FIVE**

Finally, plaintiff argues that the ALJ failed to sustain the Commissioner's burden at step five because he did not elicit vocational expert testimony about other available work plaintiff could perform, but instead relied on the Medical-Vocational Guidelines.

The burden of production shifts to the Commissioner at step five to produce vocational evidence of other work a plaintiff can perform. However, the Commissioner is not required at step five to reestablish or prove the RFC formulated at step four. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004).

Here, plaintiff argues that limitations (carpal tunnel syndrome limitations on her ability to use her hands, environmental and postural limitations found by a medical expert, and the functional limitations at step three of the sequential evaluation due to the bipolar disorder found by the ALJ) should have been included in the RFC, and therefore the ALJ's use of the Medical-Vocational Guidelines was not permitted.

However, the ALJ found that the carpal tunnel syndrome restricted plaintiff's ability to lift and carry, not the use of her hands. Furthermore, the ALJ explained why he did not adopt

the medical expert's postural and environmental limitations. And finally, at the conclusion of his evaluation of plaintiff's bipolar disorder at steps two and three, the ALJ specifically states that the "paragraph B" functional criteria are not a RFC assessment but are used to rate the severity of plaintiff's mental impairments at steps two and three.

The ALJ found that plaintiff retains the ability to perform a full range of light work, and therefore his use of the Medical-Vocational Guidelines was appropriate.

## VII. CONCLUSIONS

Based on all of the above, I find that the substantial evidence in the record as a whole supports the ALJ's decision. Therefore, it is

ORDERED that plaintiff's motion for summary judgment is denied. It is further

ORDERED that the decision of the Commissioner is affirmed.

                                                /s/ Robert E. Larsen
                                                ROBERT E. LARSEN
                                                United States Magistrate Judge

March 5, 2014
Kansas City, Missouri